20966.   TOWNSEND *v.* GEORGIA POWER COMPANY.

Decided October 2, 1931.

136

*F. W. Copeland, Porter & Mebane,* for plaintiff.
*Barry Wright, Dean & Camp,* for defendant.

BELL, J. (After stating the foregoing facts.) Our first opinion was that the petition set forth a cause of action, and we so held. We later granted a motion for a rehearing; and now, after further consideration, have reached an opposite conclusion.

The primary purpose of a street is for ordinary passage and travel by the general public, and "transportation of travelers or goods by common carriers does not fall within the ordinary way in which streets are used." *Simon* v. *Atlanta,* 67 *Ga.* 618 (44 Am. R. 739); *Schlesinger* v. *Atlanta,* 161 *Ga.* 148 (2), 161 (129 S. E. 861). Municipal authorities have the power to permit an additional or extraordinary use of the street by consenting to the operation of street-cars thereon. Civil Code (1910), § 2585 (5); *Athens Terminal Co.* v. *Athens Foundry & Machine Works,* 129 *Ga.* 393 (2) (58 S. E. 891); *Harrold* v. *Americus,* 142 *Ga.* 686 (2) (83 S. E. 534). There being no allegation to the contrary, it is presumed that the street-railway company had obtained the written consent of the city of Rome to use the streets for this purpose. *English* v. *Poole,* 31 *Ga. App.* 582 (4) (121 S. E. 589). There is another and distinct presumption which must be given effect in this case. The charter of the city of Rome (Ga. L. 1918, pp. 813, 859, § 79) provides that before beginning to pave or macadamize any street, the city commission shall designate the location and position of street-railway poles, and the like, and "shall have power and authority to require the owners or persons using the same to place them as thus located." The petition shows that both the street proper and the sidewalk next to this pole were paved, and there being nothing to indicate that the location of the poles was not determined by the city commission in accordance with this charter provision, it will be assumed on demurrer that such was the case. *Krueger* v. *McDougald,* 148 *Ga.* 429 (96 S. E. 867); *Wolfe* v. *Georgia Railway &c. Co.,* 124 *Ga.* 693 (53 S. E. 239).

"That which the law authorizes to be done, if done as the law authorizes it to be done, can not be a nuisance." *Burrus* v. *Columbus,* 105 *Ga.* 42 (31 S. E. 124); *City Council of Augusta* v. *Lamar,* 37 *Ga. App.* 418 (2) (140 S. E. 763).

A municipality is required to keep its streets in a reasonably safe condition for travel in the ordinary modes. Absolute safety is not required. *Mayor &c. of Jackson* v. *Boone,* 93 *Ga.* 662 (3) (20 S. E. 46); *City of Brunswick* v. *Glogauer,* 158 *Ga.* 792

(124 S. E. 787). The trolley-poles were necessary in the operation of the street-cars, and had to be placed somewhere. It appears that although the particular pole was situated just beyond the curb and within only five inches from the traveled portion of the street, the entire space available for vehicular traffic consisted of a paved highway about twenty-seven feet in width, and it does not appear that the location of the pole as indicated constituted an unreasonable interference with the right of the public to use the street for ordinary purposes. At least, under the facts appearing, the city commission was authorized to say that the street would still be reasonably safe for general use by the traveling public. In adopting a plan for the location of trolley-poles and other objects necessary to be given place in or near the streets and sidewalks, the city commission was exercising a governmental function, and its judgment is conclusive upon the questions determined, unless the plan is so obviously dangerous as to show a failure to consider the facts or a purpose to subject the street to an unsafe and improper use. Compare: *Towaliga Falls Power Co.* v. *Sims,* 6 *Ga. App.* 749 (6) (65 S. E. 844) ; *Bainbridge Power Co.* v. *Ivey,* 38 *Ga. App.* 586 (144 S. E. 825) ; *Kea* v. *Dublin,* 145 *Ga.* 511 (89 S. E. 484) ; *Bell* v. *Savannah,* 139 *Ga.* 298 (77 S. E. 165) ; *Sanders* v. *Atlanta,* 147 *Ga.* 819 (95 S. E. 695) ; *City of Atlanta* v. *Due,* 42 *Ga. App.* 797, 805 (157 S. E. 256).

Undoubtedly, those using the highway incurred some risk of accident by the erection and maintenance of this trolley-pole at the point described. The question here, however, is not whether the pole was a source of some danger, but is whether the danger was manifestly so great that the choice of the location was unreasonable. It is common knowledge that trolley-poles and similar objects are necessarily located near the curbs in most instances, and this court can not hold that in determining the location of the pole in question the city commission acted so unreasonably as to render the defendant power company liable for obeying its mandate. The above conclusions are sustained, we think, by the following authorities: *South Ga. Power Co.* v. *Smith,* 42 *Ga. App.* 100 (155 S. E. 80) ; Pugh *v.* Cattlettsburg, 214 ·Ky. 312 (283 S. W. 89, 46 A. L. R. 939) ; Stern *v.* International Rwy. Co., 220 N. Y. 284 (115 N. E. 759, 2 A. L. R. 487) ; Clinkenbeard *v.* St. Joseph, 321 Mo. 71 (10 S. W. (2d) 54, 61 A. L. R. 242) ; Green-

land *v.* Des Moines, 206 Iowa, 1298 (221 N. W. 953) ; Wolfe *v.* District of Columbia, 21 App. D. C. 464 (69 L. R. A. 83), affirmed in 196 U. S. 152 (25 Sup. Ct. 198, 49 L. ed. 426, 1 Ann. Cas. 967; Ring *v.* Cohoes, 77 N. Y. 83 (33 Am. R. 574) ; Gulfport &c. Co. *v.* Manuel, 123 Miss. 266 (85 So. 308) ; Dougherty *v.* Trustees, 159 N. Y. 154 (53 N. E. 799) ; Dubois *v.* Kingston, 102 N. Y. 219 (6 N. E. 273, 55 Am. R. 804) ; Schofield *v.* Poughkeepsie, 122 App. Div. 868 (107 N. Y. Supp. 767). It follows that the pole could not be found to be a nuisance and that its erection and maintenance could not amount to negligence. This case does not present a violation of the provision of the Code, § 894, to the effect that without express legislative authority a municipality can not grant the right to erect or maintain a structure or obstruction in a public street. The legislature has expressly given to cities the power to permit the use of streets for the operation of streetcars, and has conferred upon the city commissioners of Rome the authority to determine the location of trolley-poles.

Counsel for the plaintiff in error have cited several decisions in support of their contention that the petition shows actionable negligence by the defendant company. We have reached the conclusion that these decisions are each distinguishable upon their facts from the case at bar, but deem it necessary to refer specifically to the case of Lambert *v.* Westchester Electric R. Co., 191 N. Y. 248 (83 N. E. 977). In that case the trolley-pole was located near a patrol house in which the plaintiff fireman was employed. The court held that the defendant's franchise did not authorize it to place its poles where they would "unduly and unnecessarily interfere" with the public right of travel, and expressly distinguished that case upon its facts from ordinary cases denying liability, as follows : "If a person were injured by a collision with the pole by a wagon which· was being driven under circumstances which permitted deliberation and accuracy of movement, it very well might be said that the accident was not one which reasonably should be apprehended. But that is not this case. A piece of fire apparatus going to a fire is not only permitted, but expected, to go rapidly, and especially as the horses first come out of the barn it should be anticipated that they would not be under perfect control or in a regular gait, or that in making a right angle turn from the driveway into the street towards the pole, as was being

done on this occasion, mathematical accuracy could be observed in keeping the apparatus in the center of the driveway."

In the case of *McFarland* v. *McCaysville*, 39 *Ga. App.* 739 (148 S. E. 421), the facts warranted the inference that, while the city was in the exercise of a governmental function in determining the capacity and location of the fire-plug, there was yet a negligent *execution* of the plan and a violation of the ministerial duty as to keeping the streets safe, in placing on the sidewalk an object "only six inches in height" so that a pedestrian might fail to notice, and consequently stumble over, such obstruction. Nothing decided in the present case is contrary to the ruling in the *McFarland* case.

We place our decision in the instant case upon all the facts alleged with the inferences necessarily to be drawn therefrom, including the presumption that the pole was erected and maintained at a point designated by the city commission in the exercise of the governmental function. Whether the same result should be attained where a street-railway company is authorized to choose, and does itself choose the location is not decided. The petition failed to set forth a cause of action and the general demurrer was properly sustained.

*Judgment affirmed. Jenkins, P. J. and Stephens, J., concur.*